JOHN G. FLANIGAN, AS SUBSTITUTED ADMINISTRATOR OF THE ESTATE OF MARY McFEELY, PLAINTIFF-APPELLANT, v. JOSEPH B. McFEELY, AS EXECUTOR OF THE ESTATE OF BERNARD N. McFEELY, DE-FENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 22, 1953—Decided July 8, 1953.

Before Judges GOLDMANN, SMALLEY and SCHETTINO.

*Mr. Victor S. Kilkenny* argued the cause for plaintiff-appellant (*Messrs. Otis & Kilkenny,* attorneys; *Mr. Isadore Glauberman,* of counsel).

*Mr. Abraham J. Slurzberg* argued the cause for defendant-respondent (*Mr. Joseph B. McFeely,* defendant and attorney *pro se*).

The opinion of the court was delivered by

SCHETTINO, J. S. C. (temporarily assigned). This is an appeal from a summary judgment in favor of defendant.

The complaint alleged the following: Mary McFeely died intestate on June 4, 1942, and on June 10, 1942 her brother Bernard N. McFeely, was appointed administrator. He filed an inheritance tax return showing assets of Mary's estate in the amount of $292,448.86. On August 8, 1949 Bernard died testate and defendant qualified as executor under his will. Plaintiff is the substituted administrator of Mary's estate. He charged that Bernard did not file an inventory, or account. or fully perform his duties as administrator. Plaintiff demanded an accounting and judgment for the sum mentioned above, less lawful deductions.

Defendant answered that on June 10, 1942 (the date Bernard was appointed administrator of Mary's estate) all

of the remaining next of kin, 11 in number, transferred their interests in Mary's estate to Bernard; that the instrument of transfer has never been adjudged invalid; that Bernard, as sole party in interest, was not required to account (*R. S.* 3:10–1); and plaintiff is not entitled to maintain the action in behalf of the next of kin. The answer alleges other matters which did not figure in the action below, and which we need not consider on this appeal.

Plaintiff replied that on June 9, 1942 the next of kin, at Bernard's request, executed a renunciation of their right to letters of administration in favor of Bernard; that on June 10, 1942 the instrument of transfer, here relied upon by defendant, was obtained by fraudulent misrepresentation that it was a corrective form of the renunciation executed the day previous.

On the motion for summary judgment five of the next of kin signed affidavits sustaining the charge of fraud. Defendant filed an affidavit by the attorney for Bernard which controverted the charge of fraud as to the nature of the instrument in question. There is no doubt that a triable issue of fact appears. *Stacy v. Greenberg,* 9 *N. J.* 390 (1952). Defendant does not seem to dispute that this is so, but rather urges that until the instrument of transfer is adjudged invalid in proceedings brought by the next of kin, it stands as an insuperable bar to an action by the substituted administrator. It is urged, that the alleged wrong was not a wrong to the estate, but rather to the individual beneficiaries, and they alone may attack the transfer. The trial court agreed with that view and granted judgment upon that premise.

 We are constrained to disagree.

*N. J. S.* 3A:6–46 provides:

"A substituted administrator with or without the will annexed shall be entitled to demand and receive the whole of the personal estate of his decedent, except such portion thereof as shall have been properly and justly paid out and distributed. He may sue for and recover all such assets, or their equivalent whether legal or equitable, from any person, his heirs or personal representatives, chargeable therewith, and in like manner charge his predecessor in office for any breach of trust or maladministration and shall in any such

litigation represent the creditors and all persons beneficially interested in the estate."

The statute explicitly authorizes the substituted administrator to sue in behalf of "all persons beneficially interested in the estate." The next of kin manifestly came within this description. As our Supreme Court said in an appeal from the appointment of plaintiff as substituted administrator, "The object of such a proceeding is to obtain a representative of the estate capable of safeguarding the interests of all who may be entitled to participate in it." *In re McFeely*, 10 *N. J.* 133, 139 (1952). Although the court did not there reach the precise issue here raised, yet the authority of the substituted administrator to speak for the beneficiary is there plainly stated.

In essence, defendant would make plaintiff's statutory authority to maintain this action depend upon the validity of the separate defense asserted, and indeed upon the outcome of separate proceedings addressed to his defense. We cannot understand why the validity of a defense should not be litigated in the suit in which it is urged.

Defendant's suggestion that the only parties in interest are the individual beneficiaries who challenge the assignment, ignores the representative capacity which the statute confers upon the substituted administrator. He speaks for the beneficiaries and may assert in their behalf their challenge to the adequacy of the defense. That defendant may prevail as to all beneficiaries thus represented does not militate against the right of the plaintiff to speak for them. Nor would any difficulty arise if the defense should be upheld as to less than all the beneficiaries. It is not uncommon in such matters for a bar to exist as to some beneficiaries and not as to others, as for example, where some beneficiaries, but not all, are estopped to question expenditures of the fiduciary. It is easily within the flexible powers of the court to frame a judgment which expresses the just result among the several interests. In circumstances such as here presented it would be appropriate to join the individual beneficiaries, and the court on its own motion could well have directed

that they be added. See *Rule* 3:21 and *cf. Rule* 3:19–1. *Acker v. Skrotsky*, 13 *N. J. Super.* 375 (*Ch. Div.* 1951), affirmed 17 *N. J. Super.* 27 (*App: Div.* 1951). On the remand of these proceedings the trial court may find it necessary or proper to join the beneficiaries as plaintiffs. But the right of the plaintiff to maintain this representative action seems clear to us.

Defendant cites cases for the proposition that a direct action may be brought only by the party defrauded and that class actions may not be grounded upon frauds practiced by a defendant upon numerous persons. None of the cases relied upon touches the present situation because here the plaintiff is by statute the representative of the beneficiaries to protect their interests in the estate. Plaintiff does not urge a claim for relief for fraud. Rather, he urges the primary right of the beneficiaries in the estate, and challenges a defense thereto on the ground that it rests upon a document fraudulently procured.

Defendant's challenge to plaintiff's status to attack the assignment seems to be coupled with the separate thought that the document is impervious to attack except in a separate proceeding seeking equitable relief from its apparent effect. Defendant attributes to the challenged document a stature somehow greater than and different from another kind of defense. If the document had been challenged as a naked forgery, it would be clear that its proffer could not disable the substituted administrator from the assertion of his statutory authority and in the suit brought by him. How does that situation differ from the present one in which fraud *in factum* is asserted? We do not mean to suggest that a claim of fraud in the inducement would be distinguishable. Rather we refer to the substantial resemblance between forgery and fraud *in factum* to demonstrate the unsoundness of defendant's position.

In substance defendant's argument harks back to the procedural deficiencies of our practice prior to the adoption of our present system. Under the former practice, courts of law could not entertain certain defenses of equitable

nature, and in circumstances (in fact not embracing the present one), it became necessary for a plaintiff at law to seek relief in the former Court of Chancery to hurdle defenses sufficient at law. But the fusion of legal and equitable powers in the court below accomplished by the Constitution of 1947 terminated such circuitous and multiplicitous actions. Thus in *Massari v. Einsiedler*, 6 *N. J.* 303 (1951), it was held, in harmony with the design of the Judiciary Article "to facilitate and expedite the hearing of causes by disposing of all matters, whether legal or equitable, arising in a controversy in one trial" (*p.* 307), that a claim for reformation, which, if granted, would have defeated an action brought in the Law Division, constituted an equitable defense which not only was cognizable, but had to be pleaded in the law action, and that the incidental affirmative relief which in abstract theory might precede the full realization of the equitable defense, did not alter its character of a defense required to be asserted on the pain of the bar of *res judicata*. The ultimate rights and liabilities are directly ascertainable in the present suit without the intervention of any mesne proceeding.

The judgment is accordingly reversed and remanded for further proceedings in harmony with this opinion.